PEOPLE *v.* ROBINSON.

1. CRIMINAL LAW — APPEALS — QUESTIONS CONSIDERED — SUFFICIENCY OF RECORD.

Errors in the admission of testimony in a criminal case to which no objection was taken at the trial cannot be considered, particularly where resort to stenographer's minutes not embodied in the bill of exceptions is necessary to make it appear that the rights of the defendant have been invaded.

2. SAME—TRIAL — INSTRUCTIONS — MATTERS CONSIDERED ON APPEAL.

Error cannot be predicated upon failure to give instructions not asked in a criminal case, where the charge of the court was sufficiently full to cover the case fairly, and no error appears in the instructions given.

3. HOMICIDE—SELF-DEFENSE — INSTRUCTIONS — DUTY TO RETREAT
—RIGHT TO ACT UPON APPEARANCES.

Instructions stating respondent's duty to retreat from attack
if possible with safety are not erroneous for failure to include
the statement that respondent's actions are to be judged in
the light of the circumstances as they appeared to him at the
time, where in another paragraph the jury were instructed
that respondent had a right to take into consideration the
facts as they appeared to him at the time, and the jury by
finding respondent guilty of assault with intent to do great
bodily harm must have found that he did not act in self-de-
fense upon the circumstances as they appeared to him at the
time.

4. SAME—PREJUDICE.

Error is not predicable upon failure of instructions upon the
duty to retreat to include the element of the right of the re-
spondent to act upon the circumstances as they appeared to
him at the time, where, from respondent's own testimony, it
is apparent that he sought out the person assaulted at a time
when he had but to retire or remain where he was and be
safe.

Error to Emmet; Shepherd, J. Submitted January 23,
1908. (Docket No. 167.) Decided March 31, 1908.

Aquilla Robinson was convicted of an assault with in-
tent to do great bodily harm less than the crime of mur-
der, and sentenced to imprisonment for not less than three
nor more than ten years in the State prison at Jackson.
Affirmed.

*John F. Henigan*, for appellant.

*Wade B. Smith*, Prosecuting Attorney, for the people.

MONTGOMERY, J. The information in this case con-
tained two counts, one of them charging assault with in-
tent to murder, and the other assault with intent to do
great bodily harm less than the crime of murder. The
respondent was convicted of the offense charged in the
second count. The case was brought before us for re-
view on error. Numerous assignments of error are made,

based upon the failure of the trial judge to give specific instructions, and based upon alleged error in admitting testimony to which no objection appears to have been made, so far as the record discloses. It is enough to say of these assignments, *first*, that we cannot consider errors in the admission of testimony to which no objection was taken at the trial, and particularly where resort to stenographer's minutes not embodied in the bill of exceptions is necessary to make it appear that the rights of the defendant had been invaded, and that as to alleged errors based upon the omission to give instructions which were not asked by the defendant, the charge of the court was sufficiently full to cover the case fairly, and unless some error was committed in the instructions given, the respondent has failed to show that his rights were not fully protected.

In what has been said upon the subject of the admission of testimony, it is not intended to intimate that, even if the facts appeared which are assumed in the brief of counsel, any error was in fact committed.

The chief error relied upon is based upon an isolated portion of the charge in which the circuit judge said to the jury:

"A person is bound, although he is attacked—unless he be attacked with a deadly weapon—he is bound to retire if he can do so with safety. That is, merely because one person attacks another, the other person has no right to go on and wilfully kill him. He should first go away, unless he is in the defense of property, servant or something or some one who has a right to look to him for defense."

In connection with this, there was also given an instruction as follows:

"The first question is: Was Robinson guilty of assault and battery? If Robinson did no more than what was necessary in order to defend himsef from personal injury, then he is not guilty of assault and battery; but if he did what was unnecessary, or if he did more than was necessary in order to defend himself, he became and was guilty of assault and battery."

It is claimed that these instructions were erroneous for the reason that they omitted to include the statement that the respondent's actions were to be judged in the light of the circumstances as they appeared to him at the time. Respondent's counsel contends that the law of the State is stated in *Pond* v. *People*, 8 Mich. 150, as follows:

"Homicide, se defendendo, in resisting an assault not made with a felonious intent, is excusable where the danger to be resisted is to life, or of serious bodily harm of a permanent character, and unavoidable by other means in the power of the slayer so far as he is able to judge at the time. But he is bound, if possible, to get out of his adversary's way, and has no right to stand up and resist if he can safely retreat or escape."

No fault can be found with this statement of the law, but there are two sufficient answers to the contention of respondent's counsel that error was committed in the instructions given. The first is that in another portion of the charge the circuit judge did instruct the jury as follows:

"I will add one thing, that so far as relates to the charge of assault with intent to murder, Mr. Robinson had a right to take into consideration the facts as they appeared to him. For this purpose—for this reason—the court admitted the testimony on the part of Mr. Robinson as to what Mr. Baker told him. If you find that Baker told him—whether he did or not is solely a question for you to decide, and not for me—but, if you find that Baker warned Mr. Robinson against Mr. Dean, and Robinson believed it and was acting upon that information when he struck Dean or kicked him—if he did kick him— merely and for the purpose of defending himself, then you will take that into consideration as to whether there was malice; and if you find that he did that solely for the purpose of defending himself, then you will acquit him of the charge of assault with intent to murder, or of assault with the intent to do great bodily harm less than the crime of murder."

And as the jury found the respondent guilty of the offense of assault with intent to do great bodily harm, it

is fairly to be inferred that they must have found that he did not act in his own defense upon the circumstances as they appeared to him at the time.

But if there were doubt about this, the testimony of the respondent himself is such that if all reference to such claim had been omitted, no injury could have been done to the respondent. We are not concerned in dealing with the abstract questions as to rights depending upon a set of circumstances which are conclusively shown not to have existed in the case. The complaint made of the instructions as above quoted is that the jury were told that it was Robinson's duty first to have gone away. Counsel says:

"Gone away, whether the imminency of the attack would permit him to go away or not! Start to go, though the minute he turned to go he might be stabbed in the back! Go away, though it was not possible to go consistent with his own safety! Go away without qualification or condition, though it might be even physically impossible for him to go!"

If the charge had stood without modification, the question would still arise as to whether there was any testimony to show imminency of attack or a fear in the mind of respondent himself of being stabbed in the back if he should start to go away, or any doubt as to whether he could go consistent with his own safety, or as to whether it was physically possible for him to go.

The assault was made upon one Dean, in a saloon at Levering where a large number of people were present. Respondent testified:

"There were a couple or three Polocks at that time mixed up into a little fight. Well, it finally quieted down, and Mr. Baker and one of the Polocks got mixed up and they stopped them and after they stopped them Dean came to Baker. Baker was standing at my side at that time talking, in the saloon, and he says 'You lick that Polock, or (he says) I will, even if I have to take one of these spittoons and hit him over the head with it.' I says to Dean: 'I wouldn't hit anybody with a spittoon.' Then this Po-

lock called me up to the bar to take a drink, and while I was standing there, Dean says: 'You have got a drink coming there,' in a kind of sneering way, two or three times. I says, 'You needn't insinuate anything on these drinks—I have got money enough to buy what drinks I want.' Mr. Baker says: 'Come here, I want to talk with you.' He took me out in the card room—the next room back of the bar room, and he says: 'You are a friend of mine, aren't you?' I says, 'I think I am.' 'Well (he says), I want to tell you something (he says) I have known him a long time and he is a dangerous fellow, and if you mix up with him to-night, you are going to get the worst of it.' I says: 'I guess I'll take chances on that.' And we let it go at that. We went out into the barroom and had a drink, and while we were standing up there, a short while after that, there was a couple of fellows came to me and says: 'You want to look out for that Kentuckian, because he has been making threats of what he is going to do, and he has got a knife in his hand now.' I didn't pay much attention to it. There was a gang in there, and there was another row kicked up, and they rushed out doors, and while they were fighting, I seen him going out there, and he had this knife in his hand then, and I went to Mr. Prout and I says: 'There is the fellow that made the threats of what he was going to do to me with a knife.' He says: 'Show him to me.' I says: 'There he is now.' He came right in ahead of us and stopped at the bar, and Mr. Prout came in and I came in right behind him. He was leaning up against the bar at that time, standing up against it, and Mr. Prout says to him, 'What you got in your hand?' He says, 'Not anything in that hand,' and as he opened his hand like that, he kind of stepped back, and looked over his shoulder. Why, I didn't know whether he was going to hit me with the knife, and I didn't calculate to let him strike me, and I knocked him down. I was kind of a little bit out of humor on account of the threats that people had been telling he had made."

But one inference is to be drawn from this testimony, that is, that the respondent himself sought out Dean. No attempt at an assault on him was made by Dean. Mr Prout, the deputy sheriff, had gone to Dean for the purpose of securing the knife which he held in his hand. Dean had opened his hand with the knife in it to permit

Prout to take it, as appears by the testimony in the case, and at this moment the respondent assaulted him, as he had entered the saloon with the evident purpose of doing. At all events, he assaulted him not in resistance of any assault, at a time when an officer of the law had succeeded in disarming Dean, and clearly the case was not one of self-defense at all. Had the alleged weapon with which Dean was armed been a firearm, or something of a dangerous character which might have been thrown at respondent at a distance, there might have been some basis for such a theory as was put up in this case. But according to his own testimony, he was in a place of perfect safety from any assault by Dean, he was in the presence of 40 or 50 people, he had but to retire or remain where he was and be safe. The trial court was under no obligation to treat a mere theory in conflict with the respondent's own testimony as calling for any other instruction than that given. The trial judge performed his whole duty when he gave instructions appropriate to the facts as they were made to appear in the case.

The conviction is affirmed.

GRANT, C. J., and BLAIR, OSTRANDER, and CARPENTER, JJ., concurred.